In 2009, a Superior Court jury convicted the defendant of raping a fourteen year old girl. That conviction was affirmed on direct appeal in a memorandum and order issued pursuant to our rule 1:28. See Commonwealth v. Fernandez, 83 Mass. App. Ct. 1107 (2013) (Fernandez I ). In 2013, the defendant filed a pro se motion that, inter alia, requested that deoxyribonucleic (DNA) testing be performed pursuant to G. L. c. 278A, §§ 1 - 18 (first DNA motion).[2] The trial judge denied that motion based on his conclusion that "[t]he defendant has not shown, and the court cannot discern, how DNA testing would have an impact on this case." We affirmed that order in another unpublished memorandum and order. See Commonwealth v. Fernandez, 86 Mass. App. Ct. 1123 (2014) (Fernandez II ). Again representing himself, the defendant subsequently filed what he styled as a "renewed" motion for DNA testing (second DNA motion). A different Superior Court judge denied that motion, explaining in detail why the motion failed to meet the statutory prerequisite of showing that the requested testing had "the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case." See G. L. c. 278A, § 3 (b ). Before us now is the defendant's appeal from the denial of his second DNA motion.[3] We affirm.
Background. The victim was the daughter of the defendant's friend's girl friend. The defendant's conviction was based on testimony that "[a]fter the victim refused his request for oral sex, [the defendant] ... lowered the victim's pants and licked her vagina." Fernandez I. The victim reported the crime to the police four days later, and two days after that, she provided police the clothes she had worn on the day in question. No saliva was found on the clothing, a fact that the jury heard. Sperm residue was found on the girl's underpants, a fact that -- at the request of the Commonwealth -- the jury did not hear because of the rape shield statute.[4] The defendant presented an alibi defense that the Commonwealth argued (with apparent success) was fabricated. The defendant also sought to undermine the credibility of the victim in various respects.
Discussion. We begin by examining whether the second DNA motion raises issues not addressed by the first. With respect to the DNA testing issues, there are two nominal differences between the motions, which we address in turn. The first such difference has to do with what material the defendant was requesting be tested. The first DNA motion specifically requested DNA testing of the victim's underpants, while the second motion referred more generally to "the rape kit obtained in the underlying prosecution."[5] However, there is nothing in the record to suggest that any rape kit as such ever was collected, and the Commonwealth's counsel represents that one was not. In his reply brief, the defendant makes no assertion to the contrary. Rather, he simply tries to recast his motion as one seeking "DNA testing of the 'evidence' whatever the evidence is or whatever the biological material is called by counsel for [the Commonwealth]." Because the only biological material referenced in the record was the traces of sperm cells found on the victim's underwear, the second DNA motion in effect seeks DNA testing of the very same material as the first.
The second nominal difference between the first DNA motion and the second has to do with the type of DNA testing that the defendant requested. The first DNA motion requested "DNA testing" without further specification. The second DNA motion specifically requested that "Y-STR DNA" testing be done, as opposed to the CODIS testing that the defendant claimed previously had been done and on which the motion claimed the Commonwealth had "relied" at trial. However, as the Commonwealth's brief points out, the Commonwealth did not rely on any DNA testing at trial; indeed, apparently no DNA testing of the victim's clothing ever was done.[6] In any event, the arguments that the defendant now puts forward in support of his second DNA motion do not turn on the type of DNA testing at issue. Instead, the defendant makes the same arguments he made in support of his first DNA motion (namely, that DNA testing will show that the victim was having sexual intercourse with a third party and that this in turn will show that she is lying or that she somehow had reason to fabricate her claims against the defendant).
In sum, while there are nominal differences between the first DNA motion and the second, those motions in substance are the same. We already have ruled on the issues the defendant seeks to raise, and the defendant therefore is estopped from raising them again.[7] See Commonwealth v. Williams, 431 Mass. 71, 74-75 (2000).
Order dated November 29, 2017, denying motion for DNA testing affirmed.

The defendant also raised certain issues unrelated to DNA testing. Those issues are no longer in dispute.

The Commonwealth asserts that, strictly speaking, both motion judges should have "dismissed" the motions instead of "denying" them. Nothing ultimately turns on this.

Fernandez I upheld the judge's exclusion of that evidence.

See Commonwealth v. Jones, 472 Mass. 707, 711 (2015) (describing what rape kit is).

A close reading of the defendant's papers suggests that he inaccurately assumed that because the victim's underpants were tested for saliva and sperm, then that testing must have been DNA testing.

Were we to reach these issues again, we would agree with the reasoning of Fernandez II, as well as the thoughtful explanation provided by the judge who denied the second DNA motion.